UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
NEAL MENA,

                          Petitioner,

            -against-

UNITED STATES OF AMERICA,

                        Respondent.
------------------------------------------------------x

ORDER

16-CR-623 (CS)
19-CV-1537 (CS)
15-CR-281 (CS)
19-CV-2040 (CS)

Seibel, J.

      Petitioner Neal Mena[1] has filed a petition pursuant to 28 U.S.C. § 2255, seeking vacatur of his sentences in the criminal cases with docket numbers 16-CR-623 and 15-CR-281. (Pet. at 1.)[2] He alleges that he received ineffective assistance of counsel, and that had he received effective assistance, he would not have pleaded guilty under either docket number. Familiarity with the Petition, prior proceedings in the case, the general legal standards governing § 2255 petitions, and the special solicitude due to *pro se* litigants is presumed.

I.    Background

      On November 16, 2007, in the Northern District of New York, Petitioner was sentenced to 100 months' imprisonment, to be followed by four years of supervised release, on his guilty pleas to possessing cocaine with intent to distribute and being a felon in possession of a firearm. (No. 16-CR-623 Doc. 20 ("PSR") ¶ 35; No. 16-CR-623 Doc. 37 ("Gov't Br.") Ex. E ("7/10/17

---

[1] Although the caption spells Petitioner's first name "Neal," Defendant spells it "Neil." (No. 15-CR-281 Doc. 16 at 5.)

[2] "Pet." refers to the Petition, which is Doc. 33 in No. 16-CR-623 and Doc. 12 in No. 15-CR-281. References to the Petition use the pagination applied by the Court's Electronic Case Filing ("ECF") system. Because the Petition challenged two convictions, two civil cases were opened. No. 19-CV-1537 corresponds to No. 16-CR-623, and No. 19-CV-2040 corresponds to No. 15-CR-281.

Tr.") at 9.) On January 30, 2015, he was released from prison to supervised release. (PSR ¶ 35.) Because Petitioner was residing in this District, his supervision was transferred here on May 11, 2015, given docket number 15-CR-281, and assigned to Judge Oetken. (No. 15-CR-281 Docs. 1-3.)

On September 14, 2016, Petitioner was separately charged in this District with conspiracy to distribute heroin and possess heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846, and with using, carrying and possessing a firearm in connection with a drug trafficking crime, in violation of 18 U.S.C. § 924(c). (No. 16-CR-623 Doc. 2.) On October 5, 2016, a Probation Officer prepared a petition for violation of supervised release ("VOSR") in No. 15-CR-581. (*See* Pet. at 30-42.) It recommended a sentence of 24 months' imprisonment, to run concurrent with whatever sentence Petitioner received on the new charges. (*Id.* at 35.) Judge Oetken ordered the issuance of a warrant on October 12, 2016. (*See* Pet. at 42.)

On March 22, 2017, Petitioner pleaded guilty in No. 16-CR-623 pursuant to a plea agreement in which the Government agreed, among other things, to accept a plea to a narcotics conspiracy count under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846, which – unlike the original charge, which carried a five-year mandatory minimum prison term – had no mandatory minimum prison sentence. (Gov't Br. Ex. B.) The plea agreement made no reference to any VOSR. At the guilty plea, Petitioner swore, among other things, that aside from the promises in the plea agreement, nobody had promised him anything or offered him any inducements to enter in the plea agreement. (Gov't Br. Ex. D at 15.)[3] At the conclusion of the plea, around 2:50 p.m.,

---

[3]References to Gov't Br. Ex. D use the pagination assigned by the ECF system.

(*see* Gov't Br. Ex. D at 23), Petitioner's counsel mentioned that "in anticipation of a *potential* violation of supervised release report" arising from Petitioner's Northern District conviction, she had discussed with the Government the possibility of this Court sentencing Petitioner on both cases at once. (*Id.* at 22 (emphasis added).) The Court – unaware that a VOSR petition had already been filed in this District – said that that would be fine but it was really up to the judge in the Northern District. (*Id.* at 22-23.) Petitioner's counsel then said, "We can go downstairs and talk to Probation." (*Id.* at 23.) It was thus plain that none of the participants in the plea knew that a VOSR was already in the works.

Probation was apparently promptly contacted, because on the same day at approximately 4 p.m., Probation emailed the prosecutor a copy of the Petition, with a request that it be forwarded to defense counsel, which was promptly done. (*Id.* at 25.) In her email to defense counsel, the prosecutor stated, "As it turns out, probation already got Mr. Mena's VOSR transferred to SDNY. The case was assigned to Judge Oetkin [*sic*], and the attached VOSR paperwork was filed without notice to you or to me." (*Id.*) On the following day, March 23, 2017, defense counsel mailed a copy of the VOSR petition to Petitioner, (*id.* at 27), and on April 26, 2017, No. 15-CR-21 was reassigned from Judge Oetken to the undersigned. (No. 15-CR-281 Doc. 4.)

On July 9, 2017, the day before sentencing in No. 16-CR-623, Probation sent the parties an amended petition that, among other things, included more detail about the violations, corrected Petitioner's criminal history category and advisory Sentencing Guidelines range (in his favor), and recommended a sentence of 24 months' imprisonment in No. 15-CR-281, to run

consecutive to the sentence imposed in No. 16-CR-623. (Gov't Br. Ex. D at 29-38.)[4]

On July 10, 2017, before sentencing on No. 16-CR-623, Petitioner admitted to the specifications in the amended VOSR petition. (Gov't Br. Ex. E at 7.) He swore, among other things, that nobody had made him any promises or offered him any inducements to admit to the specifications, (*id*. at 6), that nobody had coerced, threatened or forced him to admit to the specifications, (*id.*), that nobody had made him a promise as to what his sentence would be, (*id*. at 7), that he understood that he could be sentenced to up to two years' imprisonment and that that would be on top of whatever sentence he got on No. 16-CR-623, (*id.* at 6,), and that he was satisfied with defense counsel and her representation of him, (*id.* at 8). The Court then sentenced Petitioner to 30 months' imprisonment on the narcotics conspiracy count, 60 months' imprisonment on the firearm count, and 18 months' imprisonment on the VOSR, all sentences to run consecutive. (*Id.* at 25-27.)

II.     Discussion

Petitioner claims that his defense counsel provided ineffective assistance because she made an unfulfillable promise that induced Petitioner's guilty plea. Specifically, Petitioner alleges that at a meeting with counsel in November 2016, she provided him with a copy of the VOSR petition and told him that the VOSR would "definitely" run concurrent because that is what Probation was recommending. (Pet. at 44-45.) He further alleges that during a meeting with defense counsel in February 2017, she reiterated that concurrent time was "pretty much

---

[4]The amendment conformed to U.S.S.G. § 7B1.3(f), which provides that a term of imprisonment imposed upon revocation of supervised release shall be served consecutively to any other prison term the defendant is serving, "whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of . . . supervised release."

guaranteed," although that was a separate matter from the 16-CR-623 indictment, and that he told her he would plead in that case if he could get a lesser included offense under § 841(b)(1)(C) and concurrent time on the VOSR. (*Id.* at 45.) Counsel then told Petitioner that the Government had agreed to the lesser included offense. (*Id.*) Before signing the plea agreement, according to Petitioner, he again asked if both of his conditions would be met, and counsel said they would be but that the VOSR sentence would not be in the plea agreement because it was a separate matter. (*Id.*) Petitioner contends that he learned only on the day of sentencing in No. 16-CR-623 that Probation was recommending consecutive time on the VOSR. (*Id.* at 46.) He claims that he told counsel that he wanted to withdraw his plea in No. 16-CR-623 and not admit to the VOSR specifications, but she told him it was too late for the former and that if he did not admit to the specifications, he would "definitely" receive the maximum sentence on the VOSR no matter what she argued. (*Id.*)

Petitioner claims he would not have pleaded guilty in No. 16-CR-623 absent the promise of concurrent time on the VOSR and that he would have insisted on a hearing on the VOSR petition had he known there was no basis for counsel's promise that he would get the maximum sentence if he did so. (*Id.*)

A. Applicable Legal Standards

To establish ineffective assistance of counsel, a petitioner must affirmatively show that "1) counsel's performance fell below an objective standard of reasonableness according to prevailing professional norms, and 2) it is reasonably likely that prejudice occurred – *i.e.*, that but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984)). Ineffective assistance during plea negotiations can invalidate a guilty

plea to the extent it undermines the voluntary and intelligent nature of the decision to plead guilty. *Id*.

When evaluating counsel's performance under the first prong of the test, a reviewing court applies a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Counsel's conduct will fall outside this range of reasonableness if it "cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness." *Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003).

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689 (internal quotation marks and citations omitted).

"Counsel's advice about whether to accept or reject a plea . . . constitutes strategic advice that should not be second-guessed by the court." *United States v. Peterson*, 896 F. Supp. 2d 305, 315 (S.D.N.Y. 2012). Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after

6

less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. "The Second Circuit has noted the difficulty of challenging counsel's strategic decisions after having plead[ed] guilty: to raise a claim despite a guilty plea . . . , the petitioner must show that the plea agreement was not knowing and voluntary, because the advice he received from counsel was not within acceptable standards." *Yalincak v. United States*, No. 08-CV-1453, 2011 WL 4502817, at *9 (D. Conn. Sept. 28, 2011) (internal quotation marks and citations omitted) (second alteration in original), *reconsideration denied*, 2013 WL 2467922 (D. Conn. June 7, 2013).[5]

> Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because representation is an art, and there are countless ways to provide effective assistance in any given case.

*Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000) (internal citations and quotation marks omitted).

Under *Strickland*'s second prong, the reviewing court must determine "whether, absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994). This analysis requires more than "mere outcome determination," but also mandates "attention to whether the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). In the context of a guilty plea, the second prong is met if Petitioner demonstrates "a reasonable probability that, but for counsel's errors, he would not

---

[5]Copies of all unreported cases cited in this Decision and Order will be provided to Petitioner.

have pleaded guilty and would have insisted on going to trial," *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), and that he had a viable trial defense, *see id.* at 59-60. Thus, the inquiry turns "in large part" on whether a defense "likely would have succeeded at trial" – in other words, whether the defendant "would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received." *Id.* (citation and internal quotation marks omitted). Likewise, "when the defendant's decision about going to trial turns on his prospects of success and those are affected by the attorney's error," he "must also show that he would have been better off going to trial" – that is, that he had a "viable defense." *Lee v. United States*, 137 S. Ct. 1958, 1965-1966 (2017).

Petitioner bears the burden of establishing both constitutionally deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

B. <u>Analysis</u>

1. <u>Substandard Performance</u>

It is simply not plausible that Petitioner's experienced counsel would have made a promise before the plea that the VOSR sentence would be consecutive, even if she then knew about the petition and its (apparently inadvertently erroneous) recommendation of concurrent time. But in any event the record is clear that counsel did not at the time of the plea know about the VOSR petition. The discussion at the conclusion of the plea, as well as the email traffic that followed, shows definitively that neither defense counsel, the Government, nor the Court was aware at that time that a VOSR had even been filed, let alone what recommendation Probation had made as to the sentence. It is thus obvious that Petitioner's claims of pre-plea discussions regarding the VOSR sentence and promises by defense counsel are fabrications.

Were there any doubt on that score, it is erased by Petitioner's own sworn statements. When he pleaded to No. 16-CR-623, he stated that apart from the plea agreement (which was silent as to any VOSR), no other promises had been made to him to induce his plea. "A federal habeas court is entitled to rely on statements made during an allocution even in the face of a later, contrary claim." *Papetti v. United States*, No. 09-CV-3626, 2010 WL 3516245, at *8 (E.D.N.Y. Aug. 31, 2010) (internal quotation marks omitted); *see, e.g.*, *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) (*per curiam*) (in rejecting ineffective assistance claim, district court entitled to rely upon defendant's sworn statements in open court that contradicted claim); *Ochoa-Suarez v. United States*, No. 07-CV-9275, 2008 WL 2220637, at *4 (S.D.N.Y. May 27, 2008) ("summarily reject[ing]" petititioner's claim that counsel led her to believe she could receive sentence below ten years, where transcript of plea included her acknowledgment of mandatory minimum and statement that no other promises had been made); *Salerno v. Berbary*, 389 F. Supp. 2d 480, 484-85 (W.D.N.Y. 2005) (rejecting challenge to validity of plea where petitioner's allegations in *habeas* proceeding were contradicted by his sworn statements at plea; "[a] trial court may fairly rely upon a [petitioner's] sworn statements made in open court"); *France v. Strack*, No. 99-CV-2510, 2001 WL 135744, at *4 (E.D.N.Y. Jan. 30, 2001) ("Where a petitioner's claims of mistake and coercion find no support in the record and are contradicted by the statements made under oath at the plea proceeding, they do not entitle him to relief.").

Further, not only did Petitioner disavow at the plea any promise of a concurrent VOSR sentence, he did not raise the supposed promise at the time he admitted to the VOSR petition. He was told before he made those admissions that his VOSR sentence would be consecutive. He confirmed that his admissions were not induced by any promises or threats, that nobody had

9

made a promise as to what his sentence would be, and that he was satisfied with his counsel's performance. Had his counsel really promised him concurrent time, refused to allow him to withdraw his plea, or threatened a 24-month sentence if he sought a hearing, one would think he would have mentioned those things at that time.

It is plain from this record that counsel could not have made and did not make the promise of concurrent time that Petitioner claims. There is thus no ineffective assistance from such a promise. The remainder of Petitioner's claims crumble with the demise of that premise: having never been promised concurrent time on the VOSR, Petitioner would have had no discussion at the time of sentencing about that supposed promise or any desire to withdraw his plea based on its breach. Likewise, Petitioner's claim that counsel threatened or promised 24 months if he did not admit to the specification is contradicted by his own statements regarding promises, coercion and satisfaction with counsel. And it is also simply not plausible that counsel told Petitioner that he could not seek to withdraw his plea or have a hearing on the specifications, although it is quite likely that she told him that both of those moves were unlikely to lead to a successful outcome. No experienced federal defense counsel – let alone one as meticulous and careful as the Court knows Petitioner's counsel to be – would make a promise or guarantee as to what a sentencing judge would or would not do.

Petitioner has thus not shown substandard performance.

    2.    <u>Prejudice</u>

Nor has Petitioner shown prejudice, chiefly because he has not begun to suggest any viable defense or any reason to believe that he would have been better off going to trial. To the contrary, the record is clear that his plea left him far better off than he would have been otherwise. He was charged with a drug offense carrying a five-year mandatory minimum and a

gun offense carrying a five-year mandatory minimum that had to run consecutive to any other sentence. (*See* No. 16-CR-623 Doc. 2.) Although not mentioned in the plea agreement, the Government could have filed a prior felony information that would have doubled the mandatory minimum for the drug count to ten years. *See* 21 U.S.C. §§ 841(b)(1)(B), 851. Thus, if convicted, he could have faced a fifteen-year mandatory minimum. The plea not only reduced that mandatory minimum to five years; it also earned him two substantial benefits under the advisory Sentencing Guidelines. Under the plea agreement, the Government held Petitioner responsible only for the 60+ grams of heroin he personally sold, rather than the 100+ grams encompassed by the conspiracy, (*see* PSR ¶¶ 11, 14; Gov't Br. Ex. B at 2), and by pleading Petitioner earned a three-level acceptance-of-responsibility reduction under the Sentencing Guidelines, *see* U.S.S.G. § 3E1.1. His advisory sentencing range thereby dropped from 111-123 months to 90-97 months. Thus, Petitioner only would have been better off going to trial if there were some reasonable chance of acquittal.

There was not. Over a five-month period, an undercover officer representing himself to be a heroin dealer, (Doc. 24 at 4), made seventeen purchases from Petitioner and his co-defendant – nine with Petitioner alone, seven with the two together, and one with the co-defendant alone, (PSR ¶ 10). Of the nine deals with Petitioner alone, seven involved heroin, one involved a firearm, and one involved both. (*Id.*) All told, Petitioner and his co-defendant sold over 100 grams of heroin and two firearms. (*Id.* ¶ 11.) In a search of Petitioner's home, law enforcement seized, among other things, a 9mm semiautomatic handgun, ammunition, 17 grams of a white powdery substance packaged in tin foil, and a digital scale. (*Id.* ¶ 12.) This conduct all took place while Petitioner was on supervised release for his Northern District narcotics conviction. The chances of acquittal were vanishingly small, and thus Petitioner was

11

substantially better off under the deal his lawyer negotiated than he would have been going to trial.

Given that a violation of supervised release must be proven only by a preponderance of the evidence, rather than beyond a reasonable doubt, Petitioner's being found to have violated supervised release was even more certain. Because of the benefits he received from pleading, his admission to the specifications in No. 15-CR-281 – which corresponded to the charges in No. 16-CR-623 – had to follow as a practical matter, particularly if Petitioner wanted to argue (as his counsel did) for concurrent time.

Thus, it is plain from the record that had Petitioner done what he now claims he wanted to do – neither pleaded in No. 16-CR-623 nor admitted to violating supervised release in No 15-CR-281 – he would be serving a significantly longer sentence than was imposed. He thus could not show prejudice even if he were able to show any failing on his lawyer's part.

C.  Hearing

To obtain a hearing on an ineffective assistance of counsel claim, a defendant "need establish only that he has a plausible claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (internal quotation marks omitted).

> Nevertheless, the Circuit has also recognized that "when the judge who tried the underlying proceedings also presides over a § 2255 motion, a full-blown evidentiary hearing may not be necessary." *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011) (internal quotation and citation omitted). Although the Circuit's "precedent disapproves of summary dismissal of petitions where factual issues exist [ ] . . . it permits a 'middle road' of deciding disputed facts on the basis of written submissions." *Id*. (internal quotations and citations omitted). Indeed, in *Raysor*, where the Court reversed the district court for failing to hold a hearing, the Circuit nevertheless re-affirmed the Circuit's earlier holding in *Chang v. United States*,

12

> 250 F.3d 79, 86 (2d Cir. 2001), where the Court had concluded that "[i]t was . . . within the district court's discretion to choose a middle road that avoided the delay, the needless expenditure of judicial resources, [and] the burden on trial counsel and the government" and that the district court "reasonably decided that [live] testimony of [the defendant] and his trial counsel would add little or nothing to the written submissions" (quoted approving[ly] in *Raysor*, 647 F.3d at 494).

*Williams v. United States*, No. 07-CV-1804, 2012 WL 1116403, at *5 (E.D.N.Y. Mar. 30, 2012) (alterations in original); *see Crisci v. United States*, 108 F. App'x 25, 27 (2d Cir. 2004) (summary order) (within court's discretion to decide petitioner's ineffective assistance claim based on affidavits of petitioner and counsel).

Having observed both Petitioner and his counsel throughout the case, including at the time of the plea and sentence, I conclude that live testimony from them would add little or nothing to the written submissions. In *Chang*, "the record was supplemented by a detailed affidavit from trial counsel credibly describing the circumstances," and that "record was sufficient to support dismissal of the petition." 250 F.3d at 85. The same is true here. Also as in *Chang*, Petitioner's claim is based "solely on his own highly self-serving and improbable assertions," in contrast to his counsel's "eminently credible" version of events, and thus – especially because I am "intimately familiar with the . . . [relevant] events and circumstances" – it is "within [my] discretion to determine that more [is] not needed." *Id.* at 86; *see, e.g., Padin v. United States*, 521 F. App'x 36, 38 (2d Cir. 2013) (summary order) (evidentiary record sufficient, without live hearing, where court reviewed affidavits and transcripts and had observed petitioner and counsel); *Wang v. United States*, 458 F. App'x 44, 46 (2d Cir. 2012) (summary order) (reasonable for court to decide petition on written record where petitioner's allegations were "incredible in and of themselves" and were contradicted by other affidavits and transcript

13

of plea colloquy); *Puglisi*, 586 F.3d at 214 (for purpose of determining whether live hearing necessary," a district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding"). Indeed, the argument for a hearing here is even weaker than it was in *Chang*, because here the documentary evidence overwhelmingly shows that Petitioner's version of events is untruthful and counsel's is truthful. Petitioner had every opportunity in his reply submission, (No. 19-CV-1537 Doc. 8), to explain how his contentions could be accurate in light of the exhibits attached to his counsel's affidavit, and he made no effort to do so. In these circumstances a live hearing would be a waste of resources.

## Conclusion

In light of the foregoing, the motion under § 2255 is denied and the Petition is dismissed. The Clerk of Court is respectfully directed to: 1) terminate Doc. 33 in No. 16-CR-623 and Doc. 12 in No. 15-CR-281; 2) close No. 19-CV-1537 and No. 19-CV-2040; and 3) provide a copy of this Order to Petitioner by mail at the following address: Neil Mena, No. 14294-052, FCI Allenwood Low, Federal Correctional Institution, P.O. Box 1000, White Deer, PA 17887.

As the Petition makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253; *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012).

SO ORDERED.

Dated: December 23, 2019
      White Plains, New York

*Cathy Seibel*
_____
CATHY SEIBEL, U.S.D.J.